**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | Case No. 8:23-cv-2801 |
| | * | |
| vs. | * | |
| | * | **COMPLAINT TO REVOKE** |
| BENJAMIN FILIBERTO PAZ, | * | **NATURALIZATION** |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

******

**I.  PRELIMINARY STATEMENT OF THE CASE**

This is a civil action in which the United States of America ("Plaintiff") seeks the revocation of the naturalized citizenship that Benjamin Filiberto Paz ("Defendant") obtained in 2015.  Defendant illegally procured U.S. naturalization and procured it by concealment of a material fact or by willful misrepresentation when he provided false answers during his naturalization proceedings to questions about both his criminal history and his prior false statements to immigration authorities.

After Defendant's naturalization as a U.S. citizen in 2015, he was developed as a suspect in 2017 for several sexual abuse, burglary, and voyeurism offenses that occurred in the early 2000s.  Defendant's DNA profile – obtained through a search warrant in 2017 – matched DNA samples of an unknown male that had been collected from a 2004 sexual abuse victim.  In a 2017 complaint, the United States charged Defendant with multiple sexual abuse and burglary counts for conduct occurring in 2002 and 2004, with Defendant pleading guilty in 2017 to sexual abuse and burglary for his 2004 crimes.

Defendant's misrepresentations in his naturalization application and at his naturalization interview deprived the U.S. government of any opportunity to meaningfully explore Defendant's

crimes, which rendered him ineligible to naturalize and for which he had not been arrested at the time of his 2014-2015 naturalization proceedings.  In completing his written naturalization application and in orally testifying under oath to the government at his interview in support of his application, Defendant falsely answered questions in a manner that concealed the material fact that he *had* committed crimes for which he had not been arrested and that he *had* provided false information in order to obtain an immigration benefit, namely naturalization.  Thus, Defendant's 2015 naturalization was illegally procured and was obtained through Defendant's willful misrepresentation and concealment of material facts regarding his 2004 crimes.  The United States accordingly brings this civil action to revoke and set aside the order admitting Defendant to U.S. citizenship and to cancel his Certificate of Naturalization.

## II.  JURISDICTION AND VENUE

1.      This is an action filed under 8 U.S.C. § 1451(a) to revoke and set aside the order admitting Defendant to U.S. citizenship and to cancel his Certificate of Naturalization No. 36996524.

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1345 for a cause of action under 8 U.S.C. § 1451(a).

3.      Venue is proper in this District under 8 U.S.C. § 1451(a) and 28 U.S.C. § 1391 because Defendant resides in this District.

## III.  PARTIES

4.      Plaintiff is the United States of America.

5.      Defendant is a naturalized U.S. citizen whose last known address of residence is in Montgomery County, Maryland.

## IV.  FACTUAL BACKGROUND

6.       The affidavit of Mary Horn, Special Agent with U.S. Immigration and Customs Enforcement ("ICE") of the U.S. Department of Homeland Security ("DHS"), showing good cause for this action as required by 8 U.S.C. § 1451(a), is attached as Exhibit A.

### IMMIGRATION HISTORY

7.       Defendant entered the United States from Mexico without inspection in August 1988.  He was placed in deportation proceedings and issued an order to show cause in August 1993.  On December 9, 1993, Defendant was granted voluntary departure, and he departed on October 1, 1994, in accordance with his voluntary departure grant.

8.       On or about December 14, 2001, Defendant filed a Form I-485, Application to Register Permanent Resident or Adjust Status ("adjustment application") (attached as Exhibit B), with U.S. Immigration and Naturalization Service ("INS"),[1] seeking lawful permanent residence as the spouse of a skilled worker.

9.       Defendant indicated in his adjustment application that he entered the United States without inspection in November 1994.

10.      On September 19, 2002, an INS officer interviewed Defendant to determine his eligibility for permanent resident status in the United States.

11.      During this interview, Defendant reaffirmed the information provided in his adjustment application.

---

[1] On March 1, 2003, INS ceased to exist, and many of its relevant functions transferred to DHS and its sub-agencies, including U.S. Citizenship and Immigration Services ("USCIS").  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 110 Stat. 2135 (Nov. 25, 2002).  Plaintiff will reference INS or USCIS where appropriate.

12.     Based on the information Defendant provided in his adjustment application and during his interview, USCIS approved the application on or about November 12, 2003, granting Defendant the status of permanent resident.

## NATURALIZATION PROCEEDINGS

### Naturalization Application

13.     On or about May 30, 2014, Defendant filed with USCIS a Form N-400, Application for Naturalization ("naturalization application") (attached as Exhibit C).

14.     In his naturalization application, Defendant answered "No" to Part 10, Question 15, which asked: "Have you **ever** committed a crime or offense for which you were not arrested?" (emphasis in original).

15.     In his naturalization application, Defendant answered "No" to Part 10, Question 23, which asked: "Have you **ever** given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?" (emphasis in original).

16.     Defendant signed his naturalization application on or about April 30, 2014, under penalty of perjury, thereby certifying that his answers to the questions therein were true and correct.

### Naturalization Interview

17.     On January 24, 2015, a USCIS officer orally interviewed Defendant regarding his naturalization application to determine his eligibility for naturalization.

18.     At the beginning of the naturalization interview, the USCIS officer placed Defendant under oath.

19.     During the naturalization interview, the USCIS officer asked Defendant questions from the written naturalization application.

20.     During the naturalization interview, Defendant orally testified under oath that he had never committed a crime or offense for which he was not arrested, consistent with his written response to Part 10, Question 15 of his naturalization application.

21.     During the naturalization interview, Defendant orally testified under oath that he had never given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal, consistent with his written response to Part 10, Question 23 of his naturalization application.

22.     During the naturalization interview, Defendant made nine changes to his naturalization application, which were handwritten in ink by the interviewing USCIS officer.

23.     At the end of the naturalization interview, Defendant again signed the naturalization application in the presence of the USCIS officer and again swore that the contents of his naturalization application, including the nine numbered changes, were true and correct to the best of his knowledge and belief.

24.     Based on the information supplied by Defendant in his naturalization application and in the sworn answers he gave during his naturalization interview, USCIS approved the naturalization application.

**Oath of Allegiance**

25.     On January 24, 2015, based on Defendant's approved naturalization application and on the responses he provided that same day on Form N-445, Notice of Naturalization Oath Ceremony, Defendant was administered the oath of allegiance, admitted to U.S. citizenship, and

issued Certificate of Naturalization No. 36996524.  *See* Form N-550, Certificate of

Naturalization (attached as Exhibit D).

**DEFENDANT'S CRIMES AND
RESULTING FALSE STATEMENTS AND TESTIMONY**

**Defendant's Sexual Abuse and Burglary**

26.     On or about February 22, 2004, at approximately 4:30 a.m., Defendant entered a

residence in Washington D.C., where he did not reside and did not have permission to enter.

*United States v. Paz*, No. 2017 CF1 004844, Plea Offer and Agreement (D.C. Super. Ct. Dec. 11,

2017) (attached as Exhibit E).

27.     Also on or about February 22, 2004, Defendant, a stranger to the person

occupying the above-referenced residence in Washington D.C., committed sexual acts by force

on the occupant through the use of physical strength or violence sufficient to overcome, restrain,

or injure the occupant.  *Id*.  Defendant eventually fled from the residence.  *Id*.

28.     After Defendant's above-referenced sexual acts, the occupant obtained police and

medical assistance, providing a DNA swab to assist with possibly identifying the perpetrator.  *Id*.

29.     Testing of the DNA swab revealed an unknown male DNA profile that was

uploaded to the Combined DNA Index System with no resulting hits.  *Id*.

**Defendant's Arrest and Plea of Guilty to Sexual Abuse and Burglary**

30.     On February 15, 2017, pursuant to a search warrant authorizing the collection of

buccal swabs from Defendant, a DNA sample was collected from Defendant.  *Id*.

31.     During testing of Defendant's DNA sample, Defendant's DNA was compared to

the unknown male DNA profile developed from the 2004 offense described above in paragraphs

26 through 27.  *Id*.

6

32.     The results of this comparison revealed that the DNA profile of Defendant matched the DNA profile of the unknown male on the swabs obtained and tested as described above in paragraphs 28 through 29. *Id.*

33.     On December 11, 2017, pursuant to a criminal complaint based on Defendant's 2004 conduct referenced above in paragraphs 26 through 27, Defendant pleaded guilty to one count of First Degree Sexual Abuse, in violation of D.C. Code § 22-3002(a)(2), and to one count of First Degree Burglary, in violation of D.C. Code § 22-801(a). *Id.*

**Defendant's False Statements and Testimony**

34.     In completing his naturalization application and in testifying under oath at his naturalization interview, Defendant's responses to Part 10, Question 15, that he had never committed a crime or offense for which he was not arrested, were false.

35.     As outlined above in paragraphs 26 through 27, at the time he completed his naturalization application and had his naturalization interview, Defendant *had* committed crimes for which he was not arrested, namely, the 2004 crimes of sexual abuse and burglary to which he pleaded guilty in 2017.

36.     In completing his naturalization application and in testifying under oath at his naturalization interview, Defendant's responses to Part 10, Question 23, that he had never given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal, were false.

37.     As outlined above in paragraphs 34 through 35, Defendant *had* "given false or misleading information to a[] U.S. Government official while applying for [the] immigration benefit" of naturalization because, at the time that he filed his naturalization application, and again at the time of his naturalization interview, Defendant provided false or misleading

information to a U.S. government official through the responses he provided to Part 10, Question

15 of his naturalization application.

## V.  GOVERNING LAW

### CONGRESSIONALLY IMPOSED PREREQUISITES
### TO THE ACQUISITION OF CITIZENSHIP

38.     No applicant has a right to naturalization "unless all statutory requirements are

complied with."  *United States v. Ginsberg*, 243 U.S. 472, 474-75 (1917).  Indeed, the Supreme

Court has underscored that "[t]here must be strict compliance with all the congressionally

imposed prerequisites to the acquisition of citizenship."  *Fedorenko v. United States*, 449 U.S.

490, 506 (1981) (an individual "who seeks political rights as a member of this Nation can

rightfully obtain them only upon the terms and conditions specified by Congress") (quoting

*Ginsberg*, 243 U.S. at 474).

39.     Congress has mandated that an individual may not naturalize if, upon application,

they "cannot demonstrate . . . an understanding of the English language, including an ability to

read, write, and speak words in ordinary usage in the English language[.]"  8 U.S.C.

§ 1423(a)(1); *see also* 8 C.F.R. § 312.1.

40.     Congress has also mandated that an individual may not naturalize unless that

person "during all periods referred to in this subsection has been and still is a person of good

moral character . . . ."  8 U.S.C. § 1427(a)(3).  The required statutory period for good moral

character typically begins five years before the date the applicant files the naturalization

application, and it continues until the applicant takes the oath of allegiance and becomes a U.S.

citizen.  *See id.*; 8 C.F.R. § 316.10(a)(1)

41.     Although Congress has not specifically defined what constitutes good moral

character for naturalization purposes, the Immigration and Nationality Act lists certain classes of

applicants who cannot be found to have the requisite good moral character.  *See* 8 U.S.C. § 1101(f).

42.     Congress has explicitly precluded individuals who give false testimony for the purpose of obtaining immigration benefits from establishing the good moral character necessary to naturalize.  8 U.S.C. § 1101(f)(6).

43.     Further, Congress created a "catch-all" provision, which states, "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."  8 U.S.C. § 1101(f) (flush language).

44.     Thus, an individual who, during the statutory period, commits an unlawful act adversely reflecting upon his or her moral character cannot meet the good moral character requirement unless he or she establishes extenuating circumstances.  *See* 8 C.F.R. § 316.10(b)(3)(iii); *see also* 8 U.S.C. § 1101(f) (flush language).

## THE NATURALIZATION REVOCATION STATUTE

45.     Recognizing that there are situations where an individual has naturalized despite failing to comply with all congressionally imposed prerequisites to the acquisition of citizenship or by concealing or misrepresenting facts that are material to the decision on whether to grant his or her naturalization application, Congress enacted 8 U.S.C. § 1451.

46.     Under 8 U.S.C. § 1451(a), this Court must revoke an order of naturalization and cancel the individual's Certificate of Naturalization if his or her naturalization was *either*:

      a.     illegally procured, *or*

      b.     procured by concealment of a material fact or by willful misrepresentation.

47.     Failure to comply with any of the congressionally imposed prerequisites to the acquisition of citizenship renders the citizenship "illegally procured." *Fedorenko*, 449 U.S. at 506.

48.     Naturalization was procured by concealment of a material fact or by willful misrepresentation, where: (1) the naturalized citizen misrepresented or concealed some fact during the naturalization process; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *See Kungys v. United States*, 485 U.S. 759, 767 (1988).

49.     Where the government establishes that the defendant's citizenship was procured illegally or by willful misrepresentation or concealment of material facts, "district courts lack equitable discretion to refrain from entering a judgment of denaturalization." *Fedorenko*, 449 U.S. at 517.

## VI.  CAUSES OF ACTION

### COUNT ONE

**ILLEGAL PROCUREMENT OF NATURALIZATION**
**LACK OF GOOD MORAL CHARACTER**
**(Unlawful Acts)**

50.     Plaintiff re-alleges and incorporates by reference the factual and legal allegations contained in Sections II through V of this complaint.

51.     Defendant was statutorily required to establish that he was a person of good moral character from May 30, 2009, five years before he filed his naturalization application, until the date he became a U.S. citizen on January 24, 2015. *See* 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1).

52.     Defendant could not establish the requisite good moral character for naturalization because he committed unlawful acts, including violations of 18 U.S.C. §§ 1001(a), 1546(a), and 1621, during the statutory period, that reflected adversely upon his moral character, and there are no extenuating circumstances. *See* 8 U.S.C. § 1101(f) (flush language); 8 C.F.R. § 316.10(b)(3)(iii).

53.     In relevant part, 18 U.S.C. § 1001(a)(2) provides criminal liability for "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly makes any materially false, fictitious, or fraudulent statement or representation[.]"

54.     During Defendant's statutory period, as outlined above in paragraphs 34 through 37, Defendant knowingly provided false statements in a matter within the jurisdiction of the executive branch, in violation of 18 U.S.C. § 1001(a), when he signed his naturalization application under penalty of perjury and filed it thereafter on May 30, 2014; and when, at the conclusion of his naturalization interview on January 24, 2015, he signed and again submitted his naturalization application under penalty of perjury, confirming its contents and his corrections to it.

55.     In relevant part, 18 U.S.C. § 1546(a) provides criminal liability for "[w]hoever knowingly makes under oath, or as permitted under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application . . . or other document required by the immigration laws or the regulations prescribed thereunder[.]"

56.     During Defendant's statutory period, as outlined above in paragraphs 34 through 37, Defendant knowingly provided false statements that establish he falsely swore in an

11

immigration matter, in violation of 18 U.S.C. § 1546(a), when he signed his naturalization

application under penalty of perjury and filed it thereafter on May 30, 2014; and when, at the

conclusion of his naturalization interview on January 24, 2015, he signed and again submitted his

naturalization application under penalty of perjury, confirming its contents and his corrections to

it.

57.     In relevant part, 18 U.S.C. § 1621 provides that one is guilty of perjury if the

person "(1) having taken an oath before a competent tribunal, officer, or person, in any case in

which a law of the United States authorizes an oath to be administered, that he will testify,

declare, depose, or certify truly, or that any written testimony, declaration, deposition, or

certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any

material matter which he does not believe to be true; or (2) in any declaration, certificate,

verification, or statement under penalty of perjury as permitted under section 1746 of title 28,

United States Code, willfully subscribes as true any material matter which he does not believe to

be true[.]"

58.     During Defendant's statutory period, as outlined above in paragraphs 34 through

37, Defendant provided false statements that establish he perjured himself, in violation of 18

U.S.C. § 1621, when he willfully subscribed as true the false contents of the naturalization

application that he filed on May 30, 2014; and when, at the conclusion of his naturalization

interview on January 24, 2015, he willfully signed and again submitted his naturalization

application under penalty of perjury, confirming its contents and his corrections to it.

59.     Defendant's false swearing in an immigration matter, in violation of 18 U.S.C.

§ 1001; making false statements, in violation of 18 U.S.C. § 1546(a); and perjury, in violation of

18 U.S.C. § 1621, adversely reflected on Defendant's moral character.

60.     There were no extenuating circumstances with regard to Defendant's unlawful

activity.  He therefore cannot avoid the regulatory bar on establishing good moral character at

8 C.F.R. § 316.10(b)(3)(iii).

61.     Because Defendant committed unlawful acts that adversely reflected on his moral

character during the statutory period, and he cannot demonstrate extenuating circumstances, he

was barred under 8 U.S.C. § 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii) from showing that he had

the good moral character necessary to naturalize as a U.S. citizen.

62.     Because Defendant was not a person of good moral character, he was ineligible

for naturalization under 8 U.S.C. § 1427(a)(3).

63.     Because Defendant was ineligible to naturalize, he illegally procured his

naturalization, and this Court therefore must revoke his naturalization as provided under 8 U.S.C.

§ 1451(a).

## COUNT TWO

### ILLEGAL PROCUREMENT OF NATURALIZATION
### LACK OF GOOD MORAL CHARACTER
### (False Testimony)

64.     Plaintiff re-alleges and incorporates by reference the factual and legal allegations

contained in Sections II through V of this complaint.

65.     Defendant was statutorily required to establish that he was a person of good moral

character from May 30, 2009, five years before he filed his naturalization application, until the

date he became a U.S. citizen on January 24, 2015.  *See* 8 U.S.C. § 1427(a)(3); 8 C.F.R.

§ 316.10(a)(1).

66.     Defendant was statutorily precluded from showing that he was a person of good

moral character during his statutory good moral character period because he gave false

testimony, under oath, for the purpose of obtaining an immigration benefit, specifically

naturalization.  *See* 8 U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(b)(2)(vi).

      67.     As outlined above in paragraphs 34 through 37, after being placed under oath

during his naturalization interview on January 24, 2015, Defendant provided the following false

testimony:

     a.   Despite having committed the crimes of sexual abuse and burglary in 2004, and

        not having been arrested for these crimes by the time of his 2015 naturalization

        interview, Defendant falsely testified under oath at his 2015 naturalization

        interview that he had never committed a crime or offense for which he was not

        arrested.

     b.   Despite having given false information in his naturalization application and at his

        naturalization interview in responding that he had never committed a crime for

        which he was not arrested, Defendant falsely testified under oath at his 2015

        naturalization interview that he had never given false or misleading information to

        any U.S. government official while applying for any immigration benefit.

      68.     Defendant provided the foregoing false testimony for the purpose of obtaining an

immigration benefit, namely, naturalization.

      69.     Because Defendant provided false testimony under oath for the purpose of

obtaining naturalization, he was barred under 8 U.S.C. § 1101(f)(6) from showing that he had the

good moral character necessary to become a naturalized U.S. citizen.

      70.     Because Defendant could not establish that he was a person of good moral

character during the statutory period, he was ineligible for naturalization under 8 U.S.C.

§ 1427(a)(3).

71.     Because he was ineligible to naturalize, Defendant illegally procured his naturalization, and this Court must revoke his naturalization as provided under 8 U.S.C. § 1451(a).

## COUNT THREE

### PROCUREMENT OF U.S. CITIZENSHIP BY CONCEALMENT OF A MATERIAL FACT OR BY WILLFUL MISREPRESENTATION

72.     Plaintiff re-alleges and incorporates by reference the factual and legal allegations contained in Sections II through V of this complaint.

73.     Under 8 U.S.C. § 1451(a), this Court must revoke Defendant's naturalization and cancel his Certificate of Naturalization because he procured his naturalization by concealment of a material fact and by willful misrepresentation.

74.     As outlined above in paragraphs 34 through 37, throughout the naturalization process, including in his naturalization application and during his interview, Defendant concealed and willfully misrepresented the following facts:

   a.   Defendant's commission of the crimes of sexual abuse and burglary in 2004, for which he had not been arrested by the time of his 2014-15 naturalization proceedings; and

   b.   Defendant's provision of false information to a U.S. government official while applying for the immigration benefit of naturalization.

75.     Defendant knew his representations were false and misleading, and he therefore made such misrepresentations willfully.

76.     Defendant's concealment and misrepresentation of his crimes, as well as his provision of false information, were material to determining his eligibility for naturalization because they had the natural tendency to influence a decision by USCIS to approve his

naturalization application.  Indeed, Defendant's crimes impacted his ability to meet the

restrictions on good moral character under 8 U.S.C. § 1101(f)(3).

77.     Defendant procured his naturalization as a result of his misrepresentations.  Had

Defendant disclosed his criminal conduct and provision of false information, USCIS would have

denied Defendant's naturalization application and would not have allowed him to take the oath

of allegiance because of his ineligibility.

78.     Defendant thus procured his naturalization by willful misrepresentation and

concealment of material facts, and this Court must revoke his naturalization as provided under 8

U.S.C. § 1451(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

(1)     A declaration that Defendant illegally procured his naturalization;

(2)     A declaration that Defendant procured his naturalization by concealment of

material facts and by willful misrepresentation;

(3)     Judgment revoking and setting aside the order admitting Defendant to citizenship

and canceling Certificate of Naturalization No. 36996524, effective as of the original date of the

order and certificate, January 24, 2015;

(4)     Judgment forever restraining and enjoining Defendant from claiming any rights,

privileges, benefits, or advantages under any document that evidences U.S. citizenship obtained

as a result of his January 24, 2015 naturalization;

(5)     Judgment requiring Defendant to surrender and deliver, within ten days of

Judgment, his Certificate of Naturalization, as well as any copies thereof in his possession or

control (and to make good faith efforts to recover and then surrender any copies thereof that he

16

knows are in the possession or control of others), to the Attorney General or to his representative, including undersigned counsel;

(6)     Judgment requiring the Defendant to surrender and deliver, within ten days of Judgment, any other indicia of U.S. citizenship, including but not limited to, U.S. passports (and passport cards, if applicable), as well as any copies thereof in his possession or control (and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession or control of others), to the Attorney General or to his representative, including undersigned counsel; and

//

//

(7)     Judgment granting the United States any other relief that may be lawful and

proper in this case.


Dated: October 17, 2023                          Respectfully submitted,

EREK L. BARRON                                   BRIAN M. BOYNTON
United States Attorney                           Principal Deputy Assistant Attorney General
District of Maryland                             Civil Division

THOMAS F. CORCORAN                               WILLIAM C. PEACHEY
Civil Chief                                      Director
United States Attorney's Office                  Office of Immigration Litigation
District of Maryland                             District Court Section
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201                        KATHLEEN A. CONNOLLY
Tel.: (410) 209-4834                             Chief, Enforcement Unit
thomas.corcoran@usdoj.gov                        District Court Section

                                                 J. MAX WEINTRAUB
                                                 Senior Litigation Counsel, Enforcement Unit
                                                 District Court Section

                                      By:        /s/ *Christopher W. Hollis*
                                                 CHRISTOPHER W. HOLLIS
                                                 Trial Attorney
                                                 United States Department of Justice
                                                 Civil Division
                                                 Office of Immigration Litigation
                                                 District Court Section, Enforcement Unit
                                                 P.O. Box 868, Ben Franklin Station
                                                 Washington, D.C. 20044
                                                 Tel.: (202) 305-0899
                                                 christopher.hollis@usdoj.gov

                                                 *Counsel for Plaintiff*


                                      18