# Exhibit E

*United States v. Paz*, No. 2017 CF1 004844
Plea Offer and Agreement (D.C. Super. Ct. Dec. 11, 2017)

*United States v. Benjamin Filiberto Paz* (D. Md.)
COMPLAINT TO REVOKE NATURALIZATION



U.S. Department of Justice

Jessie K. Liu
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

December 12, 2017

**BY ELECTRONIC MAIL**
Judy Pipe, Esq.
Nate Mensah, Esq.
Counsel for Benjamin Paz
Public Defender Service
633 Indiana Ave. NW
Washington DC 20001

        Re:    **United States v. Benjamin Paz**
                  **2017 CF1 4844**

Dear Ms. Pipe and Mr. Mensah:

      This letter is to extend a plea offer to your client, Benjamin Paz, which expires on December 12, 2017, or the commencement of any detention hearing in this case. The Government reserves the right to revoke this plea offer at any time before your client enters a guilty plea in this case. If your client accepts the terms and conditions set forth below, please have your client execute this document in the spaces provided below. Upon receipt of the executed document, this letter will become the plea agreement between your client and the Office of the United States Attorney for the District of Columbia. The terms of the plea offer are as follows:

      1. Your client is currently charged by Criminal Complaint with one count of First Degree burglary, in violation of D.C. Code §§ 22-801(a), and one count of Third Degree Sexual Abuse, D.C. Code §§ 22-3004(1), for events occurring on or about June 16, 2002, pertaining to complainant ▇; and one count of First Degree Burglary, in violation of D.C. Code §§ 22-801(a), one count of First Degree Sexual Abuse, in violation of D.C. Code §§ 22-3002(a)(2), and one count of Second Degree Sexual Abuse, in violation of D.C. Code §§ 22-3003(2) pertaining to complainant ▇. for events occurring on or about February 22, 2004. Your client agrees to admit guilt and enter a plea of guilty to: one count of **First Degree Burglary**, in violation of D.C. Code §§ 22-801(a), and one count of **First Degree Sexual Abuse**, in violation of D.C. Code §§ 22-3002(a)(2), pertaining to complainant ▇. for events occurring on or about February 22, 2004.

1



The maximum statutory penalty for First Degree Sexual Abuse is 30 years' incarceration and/or a fine of $75,000. The penalty for First Degree Burglary is not less than 5 years and not more than 30 years' incarceration and/or a $75,000 fine. Note that if the government were to indict your client on all potential charges in this case, all of the sexual abuse offenses involving both victims (███. and ███.) would be subject to the Aggravating Circumstance of two or more victims, pursuant to 22 D.C. Code § 3020(a)(5). This aggravating circumstance increases the maximum penalty on the First Degree Sexual Abuse to Life Without Possibility of Release, and increases the maximum penalty for Second and Third Degree sexual abuse offenses by 1 ½ times the statutory maximum and Sentencing Guidelines ranges.

Your client further understands that pursuant to D.C. Code § 24-403.01(b)(2)(a), the Court shall impose a term of supervised release not less than five years, and that pursuant to D.C. Code § 24-403.01(b)(4)(B), the maximum period of supervised release that the Court may impose in this case is lifetime supervised release.

Your client further understands that as a result of his convictions for First Degree Sexual Abuse in this case, he will be required to register as a sex offender for the remainder of his lifetime, pursuant to 22 D.C. Code §§ 4001(6)(a) *et seq.*

2. Your client understands that the Government will reserve stepback pending sentencing, waive enhancements, and reserve allocution at sentencing.

3. The Government agrees that it will not seek to indict your client on any greater or additional charges arising from the facts and circumstances of the two offenses that are currently charged in the Complaint and arrest warrant pertaining to victims ███. and ███. on the above-enumerated dates. The government further agrees that it will not seek to indict your client on any additional burglary or voyeurism offenses that were reported at ████████ Street, NW, ████ ██████ Street, NW, and ███ ██████ Street, NW between January 1, 2000, and December 31, 2007, or on any offenses to which your client admitted in debriefing sessions at those addresses during the same timeframe. In addition, the government further agrees that it will not seek to indict your client for any burglary or voyeurism offenses that were reported at ████████ Street, NW, ████████ Street, NW, or ██████ St. NW, between January 1, 2000, and December 31, 2007, or on any offenses to which your client admitted in debriefing sessions at those addresses during the same time frame. The defendant nevertheless agrees that the government may proffer to the Court and rely upon as the basis for its allocution facts relating to the offense involving ███. and any other offense involving residents or guests at the above-enumerated addresses.

4. The parties further agree that your client, after taking an oath to tell the truth, shall agree to a proposed factual proffer in open court on the date of the plea and acknowledge under oath that the statements in the factual proffer are true.

5. Your client and the Government agree, pursuant to Rule 11(c)(1)(c) of the Superior Court Rules of Criminal Procedure, to present this plea agreement to the Court for its approval. If the Court accepts the plea agreement and the specific sentencing range agreed upon by the parties, then the Court will embody in the judgment and sentence the disposition provided for in

2

this plea agreement, pursuant to Rule 11(c)(4) of the Superior Court Rules of Criminal Procedure. The parties understand, however, that in light of other factors the Court(s) may not agree that such a sentence range is an appropriate one and may reject the plea agreement pursuant to Rule 11(c)(5) of the Superior Court Rules of Criminal Procedure. Your client understands that if this happens, the Court(s), in accordance with the requirements of Rule 11(c)(5), will inform the parties of its rejection of the plea agreement, and will afford your client an opportunity to withdraw the plea, or if your client persists in the guilty plea, will inform your client that a final disposition may be less favorable to your client than that contemplated by this agreement.

6. In reference to the sentence, your client and the Government agree that the appropriate sentence will be a range of 8-15 years. Your client understands that if the Court accepts this agreement, he will be sentenced to a period of incarceration of 8-15 years.

7. Your client further agrees that if, pursuant to Rule 11(c)(5) of the Superior Court Rules of Criminal Procedure, the Court in either case determines to reject the plea agreement of the parties as set out in this agreement, then the parties will return to the *status quo ante*.

8. Your client understands that this Office reserves its full right of allocution for purposes of sentencing in this matter. However, the Government agrees that the sentence set forth in paragraph 6 is the agreed upon sentence in this case.

9. The Government reserves its right to full allocution in any post-sentence litigation in order to defend the Court's ultimate decision on such issues. Your client further understands that the Government retains its full right of allocution in connection with any post-sentence motions that may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons. In addition, your client acknowledges that the Government is not obligated and does not intend to file any post-sentence motions in these cases pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

10. Your client agrees that this letter is binding on the Government, but not binding on the Court, and that your client cannot withdraw his plea at a later date because of the harshness of any sentence imposed by the Court.

11. In entering this plea of guilty, your client understands and agrees to waive certain rights afforded to your client by the Constitution of the United States and/or by statute. In particular, your client knowingly and voluntarily waives or gives up his right against self-incrimination with respect to the offense(s) to which your client is pleading guilty before the Court which accepts your client's plea. Your client also understands that by pleading guilty your client is waiving or giving up his right to be tried by a jury or by a judge sitting without a jury, the right to be assisted by an attorney at trial and the right to confront and cross-examine witnesses.

12. Your client acknowledges and has been made aware that pursuant to the Innocence Protection Act, that there may be physical evidence which was seized from the victims, crime scenes or from your client or from some other source that can be tied to your client that could

3

contain probative biological material. Your client understands and agrees that in order to plead guilty in this case, your client must waive and give up DNA testing in this case and must execute the attached written waiver of DNA testing. Your client further understands that should he waive and give up DNA testing now, it is unlikely that he will have another opportunity to have the DNA tested in this case.

13. Your client understands and agrees to waive any objection to the right of any resident or guest of any of the above-enumerated addresses (i.e., ▮▮▮▮ St. NW, ▮▮▮▮ St. NW, and ▮▮▮▮ Street, NW, ▮▮▮▮ St. NW, ▮▮▮▮ St., NW and ▮▮▮▮ St. NW) during the timeframe of January 1, 2000, and December 31, 2007, to give a victim impact statement in this case, in person and/or in writing.

14. This letter sets forth the entire understanding between the parties and constitutes the complete plea agreement between your client and the United States Attorney's Office for the District of Columbia. This agreement supersedes all prior understandings, promises, agreements, or conditions, if any, between this Office and your client.

Respectfully,

JESSIE K. LIU
UNITED STATES ATTORNEY

KELLY HIGASHI
Assistant United States Attorney
Chief, Sex Offense and Domestic Violence Section

By: _____
Amy H. Zubrensky
Assistant U.S. Attorney
Telephone: (202) 252-7490

4

## DEFENDANT'S ACKNOWLEDGMENT

I have read this plea agreement and factual proffer and have discussed it with my attorney. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understanding this agreement fully. I am pleading guilty because I am in fact guilty of the offense set forth herein.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement. I am satisfied with the legal services provided by my attorney in connection with the plea agreement and matters related to it.

Date: 12/11/17

Benjamin Paz

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this plea agreement, reviewed them with my client, and discussed the provisions of the agreement with my client, fully. These pages accurately and completely set forth the entire plea agreement.

Date: 12/12/17

Judy Pipe, Esq.
Attorney for Benjamin Paz

5

## DEFENDANT'S AGREEMENT TO WAIVE DNA TESTING

      My attorney has discussed the contents of this plea agreement with me, including the fact that I may request or waive DNA testing. I understand the conditions of the plea and agree to them. I knowingly, intentionally, and voluntarily waive and give up DNA testing of any biological materials in this case. I further state that I am fully satisfied with the services my attorney has provided to me and am fully satisfied with the explanation my attorney has provided me concerning the terms of the plea offer, the potential evidentiary value of DNA evidence in this case, and the consequences of waiving and giving up DNA testing in this case and pleading guilty.

_12/11/17_  
Date

_____  
Benjamin Paz, Defendant

_12/12/17_  
Date

_____  
Judy Pipe, Esq.  
Attorney for Benjamin Paz

6

## PROFFER OF FACTS

On or about February 22, 2004, at approximately 4:30 a.m., the defendant entered the residence of ▮ St., NW, in Washington D.C., where complainant ▮. was home sleeping. The defendant did not reside at that address, nor did he have permission to enter the dwelling. The defendant was a stranger to ▮. The defendant removed ▮'s pants and underwear, and physically moved ▮.'s legs so that her legs were over her shoulders. The defendant put his mouth on ▮.'s vulva and his tongue penetrated her vulva. The defendant committed this sexual act through the use of physical strength or violence sufficient to overcome, restrain or injure ▮. During the defendant's assault, ▮. pushed the defendant in the chest, after which he got up and ran out the back door into the alley. ▮ ran out the front door and ran to ▮ St. NW to get help. ▮.'s friends called 911 and transported ▮. to an area hospital, where she received a Sexual Assault Nurse Examination. This examination included the collection of swabs from ▮.'s intimate areas. At that time, ▮. reported that her last consensual sexual activity had been more than seven days earlier, with her boyfriend. The SANE kit was later sent for forensic testing. That testing revealed an unknown male DNA profile developed from ▮.'s perianal/buttocks swabs. That unknown male DNA profile was uploaded to CODIS with no hits.

The defendant was developed as a suspect in these offenses by MPD in 2017. On February 9, 2017, a D.C. Superior Court judge signed a search warrant authorizing the collection of buccal swabs from the defendant. The warrant was executed on February 15, 2017, and the swabs were later sent for forensic testing. During the testing, the defendant's DNA profile was developed and compared to the unknown male DNA profile developed from the testing of ▮.'s perianal/buttocks swabs in the 2004 offense. The results of this comparison revealed that the DNA profile of the defendant matched the DNA profile of the unknown male on the swabs. The probability of randomly selecting an unrelated individual having a DNA profile of the unknown male DNA profile is approximately 1 in 160 quadrillion in the U.S. black population, 1 in 130 quadrillion in the U.S. Caucasian population, and 1 in 760 trillion in the U.S. Hispanic population.

## DEFENDANT'S ACKNOWLEDGMENT

I have read and discussed the Government's Proffer of Facts with my attorney. I agree and acknowledge by my signature that this Proffer of Facts is true and correct.

Date: 12/12/17

Benjamin Paz
Defendant

7