**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-23-2801 |
| BENJAMIN FILIBERTO PAZ, | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

The United States seeks to denaturalize Benjamin Filiberto Paz, a naturalized U.S. citizen, because it believes Paz illegally obtained citizenship. The government claims that Paz misrepresented on his naturalization application that he had never committed any offense for which he had not been arrested when, in fact, at the time of his application, he had committed the offenses of burglary and sexual assault ten years earlier. Paz was not arrested for those crimes until two years after he became a citizen. Now, the government seeks to revoke Paz's citizenship because it claims Paz committed perjury and related offenses when he submitted his naturalization application and concealed and misrepresented material facts in the naturalization process.

The government has moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings on two of the three counts in its complaint. For the following reasons, the Court denies the government's motion.

I.      **Factual Background**

The Court draws the facts from the allegations in the complaint, ECF 1, the answer, ECF 11, and the documents attached to the pleadings. *See Occupy Columbia v. Haley*, 738 F.3d 107,

116 (4th Cir. 2013); Fed. R. Civ. P. 10(c), 12(d).[1] At this juncture, the Court construes all factual allegations in the light most favorable to the non-movant, Paz. *See Bruce v. Riddle*, 631 F.2d 272, 273 (4th Cir. 1980).

Paz is a native of Mexico. ECF 1-2, at 2. Paz initially entered the United States from Mexico without inspection in 1988. ECF 1, ¶ 7. He was placed in deportation proceedings and was granted voluntary departure. *Id.* Paz departed the United States in October 1994 and reentered the United States without inspection in November 1994. *Id.* ¶¶ 7, 9.

In December 2001, Paz applied to adjust to his status to lawful permanent resident as the spouse of a skilled worker. *Id.* ¶ 8. United States Citizenship and Immigration Services ("USCIS") approved Paz's application on November 3, 2003, and Paz became a permanent resident. *Id.* ¶ 12.

On May 30, 2014, Paz filed with USCIS a Form N-400, Application for Naturalization. *Id.* ¶ 13. In his application, Paz marked "No" to Part 10, Question 15, which asked: "Have you **ever** committed a crime or offense for which you were not arrested?" *Id.* ¶ 14. Paz also marked "No" to Part 10, Question 23, which asked: "Have you **ever** given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?" *Id.* ¶ 15. Paz signed his application under penalty of perjury. *Id.* ¶ 16.

On January 24, 2015, a USCIS officer interviewed Paz regarding his naturalization application. *Id.* ¶ 17. The government alleges that the officer placed Paz under oath at the start of the interview. *Id.* ¶ 18. Paz claims that he does not have enough information or knowledge to

---

[1] The government attached these documents to the complaint: (1) Affidavit of Good Cause of Mary E. Horn, Special Agent with Homeland Security Investigations, U.S. Immigration and Customs Enforcement; (2) Paz's Form I-485 Application to Register Permanent Resident or Adjust Status; (3) Paz's Form N-400 Application for Naturalization; (4) Paz's Form N-550 Certificate of Naturalization; and (5) Plea Offer and Agreement in *United States v. Paz*, No. 2017 CF1 004844 (D.C. Super. Ct. Dec. 12, 2017). ECF 1-1–1-5. Paz did not attach any documents to his answer.

determine whether the officer placed him under oath and denies that the officer placed him under oath. ECF 11, ¶ 18.

The government also alleges that during the interview Paz testified under oath that he had never committed any crime or offense for which he was not arrested and that he had never given false or misleading information to any U.S. government official while applying for an immigration benefit or to prevent deportation, exclusion, or removal. ECF 1, ¶¶ 20, 21. The government alleges that Paz made changes to his naturalization application, which the interviewing officer wrote on his application in red ink. *Id.* ¶ 22. Finally, the government alleges that Paz signed the application again at the end of the interview and swore that the contents of his naturalization application, including the changes made at the interview, were true and correct to the best of his knowledge and belief. *Id.* ¶ 23. Paz denies the allegations in these paragraphs in the complaint. ECF 11, ¶¶ 20–23.

USCIS approved Paz's naturalization application. ECF 1, ¶ 24. Paz took the oath of allegiance on January 24, 2015 and was sworn in as a U.S. citizen that day. *Id.* ¶ 25. USCIS issued Paz a Certificate of Naturalization. *Id.*

Two years after Paz became a citizen, he pleaded guilty to two felonies that he had committed more than a decade before he applied for citizenship. In February 2004, at approximately 4:30 a.m., Paz entered a residence in Washington, D.C. without permission. *Id.* ¶ 26. Paz sexually assaulted the sleeping resident of the home. *Id.* ¶ 27. The resident pushed Paz in the chest, and he ran out of the home and into an alley. ECF 1-5, at 8. The resident went to the hospital, where she completed a forensic exam. *Id.* Thirteen years later, in February 2017, Paz was identified as the assailant through DNA testing. *Id.* Paz pleaded guilty to one count of first-degree

burglary, in violation of D.C. Code § 22-801(a), and one count of first-degree sexual abuse, in violation of D.C. Code § 22-3002(a)(2). ECF 1, ¶ 33; ECF 11, ¶ 33.

On October 17, 2023, the government filed suit to revoke and set aside Paz's citizenship and cancel his certificate of naturalization. ECF 1. The government asserts three counts: (1) illegal procurement of naturalization through unlawful acts; (2) illegal procurement of naturalization through false testimony; and (3) procurement of citizenship by concealment of a material fact or by willful misrepresentation. Paz filed an answer. ECF 11. The government moved for judgment on the pleadings on Counts One and Three. ECF 14. The motion is fully briefed. ECF 14-1, 17, 18. A hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2023).

## II.    Standard of Review

After the pleadings are closed but early enough not to delay trial, "a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In resolving a motion for judgment on the pleadings, the court considers the pleadings, which include the complaint, the answer, and any documents attached to those filings, as well as any documents attached to the motion that are "integral to the complaint and authentic." *Occupy Columbia*, 738 F.3d at 116 (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see* Fed. R. Civ. P. 10(c), 12(d). The Court accepts as true the allegations in the non-movant's pleadings and the undenied allegations in the movant's pleadings. *See Trice v. Oliveri & Assocs., LLC*, No. GLR-19-3272, 2022 WL 36451, at *8 (D. Md. Jan. 4, 2022); *see also Educ. Impact v. Travelers Prop. Cas. Co.*, No. 15-CV-4510-EMC, 2016 WL 1639548, at *1 (N.D. Cal. Apr. 26, 2016) ("If there are disputed facts, then the allegations of the nonmoving party are taken as true."). The Court must "draw[] all reasonable factual inferences from" the non-movant's allegations in their favor. *Drager v. PLIVA*

*USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

"The standard for resolving a motion pursuant to Rule 12(c) depends on the nature of the relief being sought." *Davis v. Reliance Test & Tech. LLC*, No. DKC-22-1760, 2024 WL 83347, at *1 (D. Md. Jan. 8, 2024). Typically, a defendant moves under Rule 12(c) for dismissal of a claim on the ground that it fails as a matter of law. That is not the case here. Here, the plaintiff moves for judgment on its claims on the ground that they are meritorious as a matter of law. When, as here, "the moving party seeks affirmative relief on the basis of the pleadings," the Court applies the standard for summary judgment under Rule 56. *Geoghegan v. Grant*, No. DKC-10-1137, 2011 WL 673779, at *3 (D. Md. Feb. 17, 2011); *accord CX Reinsurance Co. v. Camden Mgmt. Servs., LLC*, No. WMN-14-180, 2014 WL 5510914, at *1 (D. Md. Oct. 30, 2014) ("The standard for a Rule 12(c) motion on the pleadings is identical to the standard for summary judgment motions when the moving party seeks affirmative relief on the basis of the pleadings and not merely a dismissal of claims brought against it."). Under that standard, the Court may grant judgment on the pleadings only where the parties do not disagree about any material facts and the case can be decided as a matter of law. *Bell Atl.-Md. v. Prince George's County*, 155 F. Supp. 2d 465, 472 (D. Md. 2001). If a "defendant has denied allegations that would be required to be proven for a plaintiff to prevail, or has asserted affirmative defenses that, if proven, would defeat a plaintiff's claims, a plaintiff's motion for judgment on the pleadings must be denied." *Hall v. Sheppard Pratt Health Sys., Inc.*, No. ABA-22-3261, 2024 WL 1346837, at *3 (D. Md. Mar. 29, 2024); *see also Deutsche Bank Nat'l Tr. Co. v. Fegely*, 767 F. App'x 582, 583 (4th Cir. 2019) (per curiam) (vacating and remanding grant of judgment on the pleadings to the plaintiff because the defendant denied factual allegations in the complaint necessary to plaintiff's claims); *Trice*, 2022 WL 36451, at *8 (noting

a plaintiff is entitled to judgment on the pleadings "only where the undenied facts set forth in the complaint (considered alongside material allegations of fact in the answer) establish the defendant's liability" (quoting *Volvo Fin. Servs. v. JRD Contracting, Inc.*, No. CV 17-0089-WS-B, 2017 WL 8941065, at *3 (S.D. Ala. July 7, 2017))).

### III.    Discussion

The right to American citizenship is "a right no less precious than life or liberty." *Klapprott v. United States*, 335 U.S. 601, 616–17 (1949) (Rutledge, J., concurring in result). But for naturalized citizens, the right is not absolute. *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). Section 1451(a) of the Immigration and Nationality Act allows the government to revoke naturalization and to cancel a naturalized citizen's certificate of naturalization if the naturalization was "illegally procured or [was] procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). Due to the severe consequences of denaturalization, the government must prove its entitlement to denaturalization by clear, unequivocal, and convincing evidence that does "not leave 'the issue in doubt.'" *Costello v. United States*, 365 U.S. 265, 269 (1961) (quoting *Schneiderman v. United States*, 320 U.S. 118, 125 (1943)). "[O]nce a district court determines that the Government has met its burden of proving that a naturalized citizen obtained his citizenship illegally or by willful misrepresentation, it has no discretion to excuse the conduct." *Fedorenko*, 449 U.S. at 517.

### A.    Illegal Procurement of Citizenship

In Count One, the government alleges that Paz illegally procured his citizenship because he was not eligible to naturalize during the application process. "Citizenship is illegally procured if some statutory requirement that is a condition precedent to naturalization is not met during the naturalization process." *United States v. Okeke*, 671 F. Supp. 2d 744, 748 (D. Md. 2009).

To become a citizen of the United States, a naturalization applicant must show that they have been and continue to be "a person of good moral character" during a prescribed period. 8 U.S.C. § 1427(a). For most naturalization applicants, like Paz, the statutory good moral character period starts five years before the applicant submits his application and ends when the applicant takes his oath of allegiance. *Id.* The parties agree that Paz's statutory good moral character period started on May 30, 2009, five years before he applied for naturalization, and continued until January 24, 2015, when Paz took the oath of allegiance and became a citizen. ECF 1, ¶ 51; ECF 11, ¶ 51.

The government alleges that Paz was not a person of good moral character during the statutory period. The Immigration and Nationality Act and corresponding regulations identify bars to an applicant's showing of good moral character. *See* 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10(b). For example, a person convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43) is forever barred from establishing good moral character. 8 U.S.C. § 1101(f)(8). A person also cannot establish good moral character if they committed a crime involving moral turpitude during the statutory period. 8 C.F.R. § 316.10(b)(2)(i).

The statute and regulations also include "catch-all" provisions. Section 1101(f)(9) states that "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." Indeed,

> [u]nless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b)(1) or (2).

8 C.F.R. § 316.10(b)(3)(iii). "The phrase 'unlawful acts' is not defined, but has been interpreted to mean 'bad acts that would rise to the level of criminality, regardless of whether a criminal

prosecution was actually initiated.'" *Etape v. Napolitano*, 664 F. Supp. 2d 498, 507 (D. Md. 2009) (quoting *Meyersiek v. U.S. Citizenship & Immigr. Servs.*, 445 F. Supp. 2d 202, 205 (D.R.I. 2006)).

The government alleges that, under the "catch all" provisions, Paz was barred from establishing good moral character because he "committed unlawful acts . . . during the statutory period, that reflected adversely upon his moral character, and there are no extenuating circumstances." ECF 1, ¶ 52. The alleged unlawful acts are perjury, in violation of 18 U.S.C. § 1621; making a false statement in an immigration application or document, in violation of 18 U.S.C. § 1546(a); and making a false statement, in violation of 18 U.S.C. § 1001(a). Each of these violations requires proof that Paz made the false statements willfully or knowingly. The government alleges Paz committed these unlawful acts when he attested on his naturalization application that he had never committed a crime or offense for which he was not arrested (Question 15) and that he had never given false or misleading information to a U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal (Question 23). ECF 14-1, at 9.

Paz denies that he committed these unlawful acts. He specifically denies that he acted willfully or knowingly. Paz argues that, because he denies essential elements of the offenses, the government has not established, through the undenied allegations in the pleadings, that he committed unlawful acts during the statutory period. In consequence, Paz argues, the government has not established liability on Count One. The Court agrees with Paz.

### 1.  Perjury, in Violation of 18 U.S.C. § 1621

Under 18 U.S.C. § 1621, a person is guilty of perjury if the person either:

**(1)**      Having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and

contrary to such oath states or subscribes any material matter which he does not
believe to be true; or

**(2)**      In any declaration, certificate, verification, or statement under penalty of
perjury as permitted under section 1746 of title 28, United States Code, willfully
subscribes as true any material matter which he does not believe to be true[.]

To establish willfulness under either subsection, the government must prove the defendant had a

"willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). If

the false testimony was the "result of confusion, mistake, or faulty memory," it was not willful. *Id.*

The government alleges that Paz's conduct violated both subsections of § 1621. As to

subsection (1), Paz argues that judgment on the pleadings is inappropriate because he denies that

he took an oath at the beginning of his naturalization interview. ECF 17, at 12. The government

does not contest that this fact is in dispute. Given this factual dispute, judgment on the pleadings

based on a violation of subsection (1) of § 1621 is not appropriate.

Turning to subsection (2), the government correctly notes that an oath is not required under

the plain language of the statute. *See* 18 U.S.C. § 1621(2); ECF 18, at 2–3. Because Paz signed his

naturalization application under penalty of perjury, the government says, Paz violated subsection

(2) when he answered no to Questions 15 and 23 and then signed his application. ECF 18, at 3. It

also argues that Paz violated subsection (2) when he signed his application again at his

naturalization interview. *Id.*

Paz does not dispute that he signed his naturalization application under penalty of perjury

when he initially completed it and again at the end of his naturalization interview. ECF 11, ¶¶ 16,

23. Instead, Paz denies that he "willfully subscribed as true the false contents of his naturalization

application . . . ." *Id.* ¶ 58; *see* ECF 1, ¶ 58. Still, the government insists judgment on the pleadings

is warranted because Paz's denial that he acted willfully is not reasonable or plausible. The

government argues that any reasonable person would know that it was "illegal to break into a

stranger's home, straddle that stranger, and sexually abuse her by force while she slept." ECF 18, at 5. The government also points to the fact that, in the stipulation of facts in Paz's plea agreement, Paz admitted to running into an alley after the victim pushed Paz off her. *Id.* at 6. Paz's flight, the government argues, suggests he knew his conduct was illegal. *Id.*

Questions of a party's intent should be resolved by a trier of fact. *See Borkowski v. Baltimore County*, 583 F. Supp. 3d 687, 696 (D. Md. 2021); *see also Life Prod. Clearing, LLC v. Angel*, 530 F. Supp. 2d 646, 652 (S.D.N.Y. 2008) (denying judgment on the pleadings and noting that "[c]ases that hinge on an issue relating to state of mind should generally not be disposed of summarily"); *Cincinnati Ins. v. Drenocky*, 194 F. Supp. 3d 329, 335–36 (M.D. Pa. 2016) (denying judgment on the pleadings on claim that homeowner made knowing misrepresentation to insurer because a reasonable jury could find that owner's misrepresentation was not knowing, in part because of the passage of time). *See generally Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*, 403 F.3d 188, 197 (4th Cir. 2005) ("[A]n award of summary judgment is seldom appropriate in disputes in which 'particular states of mind are decisive as elements' of the claim or defense." (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979))). That principle rings especially true here, where the government must establish Paz's state of mind by clear, convincing, and unequivocal evidence.

The Court cannot conclude, from the undenied allegations in the pleadings, that Paz willfully made a material misrepresentation in his naturalization application. In his answer, Paz admits he made false statements, but he denies that he made them willfully. ECF 11, ¶¶ 34, 36. There is nothing in the undenied pleadings about Paz's state of mind or intent when he made the false statements. Paz submitted his naturalization application a decade after he committed the criminal conduct for which he had yet not been arrested. Perhaps the passage of time affected Paz's

state of mind and that he made the false statements "as a result of confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94. That is possible even though, as the government emphasizes, Paz admitted to fleeing the scene of the crime after the sexual assault. Paz's post-offense flight does not establish, by clear, convincing, and unequivocal evidence, that ten years later, he willfully made a false statement in his naturalization application. The stipulated facts in support of Paz's plea agreement do not describe his state of mind when he committed the offense in 2004 or when he applied for naturalization in 2014. On this limited record, the Court cannot conclude, as a matter of law, that Paz made a materially false statement with the intent to provide false testimony. Discovery is necessary to develop the bare factual record on Paz's state of mind.

Both parties cite *United States v. Castillo* to support their positions. There, the government sought to denaturalize Elfidio Castillo because he allegedly violated §§ 1621, 1546(a), and 1001(a)—the same offenses the government alleges Paz violated—during the statutory good moral character period. Case No. PWG-19-3459, 2021 WL 825974, at *2 (D. Md. Mar. 4, 2021). Castillo applied to naturalize on March 30, 2009, so his good moral character period began on March 30, 2004. *Id.* at *1. While Castillo's naturalization application was pending, he was arrested for sexually abusing his minor niece. *Id.* Castillo later admitted that the sexual abuse happened sometime between 1999 and 2006—potentially outside of his good moral character period. *Id.* In his naturalization application, Castillo answered "no" to Questions 15 and 23 in the good moral character section, the same questions at issue here. *Id.* at *2. After Castillo naturalized, he pleaded guilty to a sexual offense. *Id.* Castillo's plea agreement stated that he touched his niece's breasts one time when she was between six and thirteen years old. *Id.* at *5.

In a motion for judgment on the pleadings, the government argued that "because Castillo knew that he had sexually abused his minor niece for which he had not been arrested then, and yet

he concealed this material matter in his naturalization application, which he signed under penalty of perjury, his answer was willfully misleading." *Id.* at *5. In response, Castillo admitted that he suspected touching his niece's breasts on a single occasion was "immoral," but he denied knowing the conduct was illegal when he submitted his naturalization application. *Id.* The court acknowledged that "it may be implausible to a reasonable person that a man in his 30s could honestly believe that his sexual abuse of his minor niece was lawful," yet the court credited Castillo's denial of the perjury allegations. *Id.* Citing Rule 12(c)'s requirement to view the inferences in the light most favorable to the non-movant, the court found that it "cannot say that the government, by the pleadings, has proffered clear, unequivocal, and convincing evidence demonstrating that Castillo was aware of the falsity of his statement or deliberately made the false statement when he filed the application." *Id.* Thus, the pleadings did not establish that Castillo's answers to Questions 15 and 23 on his naturalization application were "willfully misleading." *Id.* The court denied the government's motion for judgment on the pleadings.

Here, the facts are different, but the legal standard is the same. Paz's crime—breaking into a stranger's home in the middle of the night and forcibly sexual assaulting the stranger in her home—is quite different than Castillo's crime—touching his minor niece's breast one time. Even so, Paz, like Castillo, denies he willfully made a misrepresentation in his naturalization application, and nothing in the current record conclusively establishes his state of mind when he submitted the application. Thus, as in *Castillo*, when the facts are viewed in the light most favorable to Paz, the Court finds that the government has not established by clear, unequivocal, and convincing evidence that Paz willfully made a material misrepresentation in his naturalization application.

In its motion, the government essentially asks the Court to find Paz's denials in his answer to the complaint not credible and to enter judgment against him without any discovery whatsoever.

The Court declines that invitation. On a motion for judgment on the pleadings, courts do not weigh facts or make credibility determinations. *See Ayoola v. Union Cnty. Dep't of Soc. Servs.*, Case No. 3:24-cv-455-KDB-DCK, 2024 WL 4942416, at *2 (W.D.N.C. Nov. 15, 2024) ("Courts cannot weigh facts or determine credibility in ruling on motions for judgment on the pleadings . . . ."). This case is not an exception to that rule.

The government has not clearly, convincingly, and unequivocally established, on the undenied facts in the pleadings, that Paz willfully misrepresented a material fact in his citizenship application. To grant the government's motion—without any discovery on Paz's state of mind when he applied for naturalization—would result in the revocation of his U.S. citizenship. That may be the ultimate result in this case, but it will not occur at this nascent stage in the litigation.

### 2. Falsely Swearing in an Immigration Matter, in Violation of 18 U.S.C. § 1546(a)

Section 1546(a) of Title 18 of the United States Criminal Code provides that a person is guilty of violating this statute if the person

> knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application . . . or knowingly presents any such application . . . which contains any such false statement or which fails to contain any reasonable basis in law or fact[.]

To show that a person made a false statement "knowingly" under § 1546(a), the government must prove that he was "aware of the act and d[id] not act . . . through ignorance, mistake, or accident." *United States v. Dockter*, 58 F.3d 1284, 1288 (8th Cir. 1995) (quoting Eighth Circuit Model Criminal Jury Instruction 7.03 (1994 ed.)); *see also United States v. Kimble*, No. WDQ-13-035, 2015 WL 4164820, at *32 (D. Md. July 8, 2015) ("To act 'knowingly' means to act intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness." (quoting *United States v. Archer*, 671 F.3d 149, 159 (2d. Cir. 2011))). "The 'knowingly' standard, which requires

a defendant to act with the awareness of making a false statement, thus, is essentially treated the same as the 'willfully' standard for which a 'knowledge of the falsity' would suffice." *Castillo*, 2021 WL 825974, at *7 (quoting *Toribio-Chavez v. Holder*, 611 F.3d 57, 63 (1st Cir. 2010)).

Paz admits his answers to Questions 15 and 23 were false, but he denies making the false statements knowingly. For the same reasons the Court denied judgment on the pleadings on the government's perjury theory under § 1621, the Court denies judgment on the pleadings on the government's theory under § 1546(a). The government has not shown that Paz's false statements in his naturalization application were not due to "ignorance, mistake, accident, or carelessness." *See Kimble*, 2015 WL 4164820, at *32. The undenied allegations in the pleadings do not prove Paz's state of mind when he completed his naturalization application. Thus, the government has not shown by clear, unequivocal, and convincing evidence that Paz knowingly made false sworn statements in the application.

### 3. Making False Statements, in Violation of 18 U.S.C. § 1001(a)

To establish that Paz violated § 1001(a), the government must prove that (1) he made "a false statement in a matter involving a government agency," (2) he made the statement "knowingly or willfully," and (3) the statement is "material to the matter within the agency's jurisdiction." *United States v. Legins*, 34 F.4th 304, 314 (4th Cir. 2022).

As with the perjury and false swearing offenses, Paz disputes that he made the false statements on his naturalization application willfully or knowingly. The Court denies the government's 12(c) motion on its § 1001(a) theory, because the government has not shown by

clear, unequivocal, and convincing evidence that Paz willfully or knowingly made false statements in his naturalization application.[2]

The motion for judgment on the pleadings on Count One is denied.

### B. Concealment or Willful Misrepresentation

In Count Three, the government seeks to revoke Paz's citizenship on the ground that he concealed or willfully mispresented material facts to obtain naturalization.

To prove that Paz procured his citizenship by concealment or willful misrepresentation, the government must establish that: "(1) [Paz] misrepresented or concealed some fact; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) [Paz] procured citizenship as a result of the misrepresentation." *United States v. Valenzuela*, No. 17 C 8423, 2018 WL 3619503, at *8 (N.D. Ill. July 29, 2018) (citing *Kungys v. United States*, 485 U.S. 759, 767 (1988)). "The element of willfulness is satisfied by a finding that an applicant for naturalization was aware of a fact and that he or she misrepresented that fact deliberately and voluntarily." *Okeke*, 671 F. Supp. 2d at 752.

The Court denies the government's motion as to Count Three for the same reason it denied the government's motion as to Count One—the government has not proven by clear, unequivocal, and convincing evidence that Paz acted willfully when he misrepresented his criminal history on his naturalization application. The government cites *United States v. Okeke* in support of its argument that Paz acted willfully, but *Okeke* is distinguishable. In *Okeke*, the district court granted summary judgment to the government in a denaturalization case. *Id.* at 748. The defendant

---

[2] Paz argues that the Court should deny judgment on the pleadings for another reason: The government has not established, through the undenied allegations in the pleadings, the absence of extenuating circumstances that would mitigate Paz's culpability. The Court need not reach this alternative ground to deny the motion because it has already found that the dispute over Paz's state of mind when he submitted his naturalization application precludes judgment on the pleadings.

affirmed in his naturalization application that he had never been arrested. *Id.* at 747. The evidence showed otherwise. A year before he submitted his naturalization application, the defendant was arrested and charged with domestic violence-related offenses. *Id.* at 767. Police officers took him to the police station, fingerprinted him, and then held him in jail one night. *Id.* The defendant did not submit any evidence to support his position that he did not know he was under arrest when he was taken to the police station and jailed overnight. *Id.* at 752. Because the defendant did not identify any evidence to defeat the government's evidence of willfulness, the court found that the government met its burden to show the defendant willfully made a false statement on his naturalization application and granted it summary judgment. *Id.* at 752–53. Here, there has not been any discovery, and the Court does not consider the sufficiency of evidence on a motion for judgment on the pleadings. *Okeke* may help the government on summary judgment, but it does not help the government on a motion for judgment on the pleadings.

The government also argues that Paz's misrepresentation was willful because he signed his naturalization application under penalty of perjury. The government points to *United States v. Hirani*, 824 F.3d 741 (8th Cir. 2016). There, the Eighth Circuit found that the defendant's signature under penalty of perjury on his naturalization application showed that the misrepresentation was willful and affirmed the grant of summary judgment to the government. *Id.* at 749. But the defendant in *Hirani* did not dispute willfulness. *Id.* Paz does. The undenied fact that Paz signed the application under penalty of perjury does not establish he willfully concealed or misrepresented a material fact in the application.

The government's motion for judgment on the pleadings on Count Three is denied.

**IV.    Conclusion**

The government's motion for judgment on the pleadings is denied. A separate order follows.

Date: _December 20, 2024_

_____

Deborah L. Boardman
United States District Judge